**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**ABDO OBAID,**

**Plaintiff,**

**- against -**

**BUILDING SERVICE 32BJ PENSION FUND ET AL.,**

**Defendants.**

**13 Civ. 0241 (JGK)**

**MEMORANDUM OPINION AND ORDER**

**JOHN G. KOELTL, District Judge:**

Plaintiff Abdo Obaid commenced this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). He alleges that defendants Building Service 32BJ Pension Fund (the "Pension Fund") and the Board of Trustees of Building Service 32BJ Pension Fund (the "Trustees") wrongfully denied him disability benefits. The parties agreed to try this action as a non-jury trial based on a stipulated Administrative Record ("AR") and their trial briefs. Endorsed Letter, May 28, 2013, ECF No. 13; Endorsed Letter, Mar. 26, 2013, ECF No. 7. Based on that procedure, and pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

1. From 1975 to 2009, Obaid worked as a custodian in office buildings in New York City. AR 356. He was a member of the Service Employees International Union, Local 32BJ (or its

predecessor in interest) during that time and was a participant in the Pension Fund. See AR 272, 374. He has a third grade education. AR 343. Obaid's last date of covered employment was on or about September 19, 2009. AR 401. In March 2010, Obaid submitted a claim for disability benefits to the Pension Fund. AR 272, 329.

2. The Pension Fund is a multi-employer benefit fund established pursuant to the Taft-Hartley Act, 29 U.S.C. § 186(c)(5). AR 5–6. The Fund is jointly administered by an equal number of management and union trustees and is governed by an Agreement and Declaration of Trust. AR 12.

3. The Pension Plan provides that to be eligible for a permanent disability pension, a participant must be "permanently and totality disabled," must have at least 120 months of service credits, and must have become disabled while working in covered employment. AR 66.[1]

4. Under the Pension Plan, a participant is "permanently and totality disabled" if he is found "totally and permanently unable, as a result of bodily injury or disease, to engage in

[1] The Pension Plan was amended as of December 1, 2010, to provide that a participant will be deemed totally disabled if he presents a "certification of a permanent disability award from the Social Security Administration." AR 112. However, that provision only applies to participants who filed an application for benefits on or after August 1, 2010, id., and Obaid filed his application in March 2010. AR 272, 329.

any further employment or gainful pursuit." AR 66; see also AR 167. The Pension Plan affords the "Trustees or their authorized delegate(s) . . . sole and absolute discretion" to determine whether a participant is totally and permanently disabled. AR 66; see also AR 16, 81.

5. At the time that Obaid submitted his application, the Pension Fund had delegated to MetLife the authority to make clinical determinations related to disability pension applications and appeals. AR 256, 259B–60.

6. In support of his disability pension application, Obaid submitted a letter from his primary physician, Dr. Iraj Akhavan. The letter identified a number of conditions that Obaid suffered from, including hip joint arthritis and cartilage loss. Dr. Akhavan considered Obaid "totally disable[d] and unable to do any type of job related activities." AR 277. Obaid also submitted MRI results, blood test results, x-rays, prescriptions, and notes from Dr. Akhavan. AR 278–98.

7. In a letter dated July 12, 2010, MetLife informed Obaid that his application for disability pension benefits had been denied. In relevant part, the denial letter stated:

> The medical records submitted do support your inability to function in any capacity at the present time. However, they do not support a permanent condition . . . . Based on the information provided by Dr. Iraj Akhavan, you may require hip surgery in the future. As a result, you will have limitations and restrictions

      > that would preclude your abilities [sic] to return to work as a [c]ustodian.
>
> In conclusion, based on the restrictions and limitations identified, you may not be able to return to your job as a [c]ustodian, but you may have sedentary work capacity in the future. Therefore, you do not meet the definition of totally disabled . . . and it is recommended that your claim be denied. AR 312–13.

8. The denial letter does not identify what "sedentary work" that Obaid was qualified to perform.

9. In a letter also dated July 12, 2010, MetLife approved Obaid's "claim for long Term Disability (LTD) Benefits from the Building Service 32BJ Health Fund." AR 309. This benefit is provided to covered employees who become "totally disabled while working in covered employment." Def's. Opening Br. App. A.

10. Obaid timely appealed by a letter dated July 20, 2010. AR 374.

11. MetLife submitted Obaid's appeal to Dr. Robert Broghammer, who then wrote a "Peer Review Report." AR 405. The Peer Review Report concluded that medical evidence showed that Obaid had "functional limitations" but that he was capable of "working an eight hour day." AR 407. However, the Report does not identify what type of sedentary work Obaid is qualified to do. Dr. Broghammer also noted that Obaid's "arthritis is a permanent condition. If it advances enough, the claimant would be a candidate for a total hip arthroplasty which itself would also likely result in some permanent restrictions." Id.

12. A copy of the Peer Review Report was sent to Dr. Akhavan for comment. In a letter dated September 20, 2010, Dr. Akhavan responded by noting that Dr. Broghammer's report assumed that Obaid performed "desk work[]." Dr. Akhavan explained that Obaid was a custodian, which is more physically demanding than sedentary work. AR 317.

13. On September 21, 2010, Dr. Broghammer issued an addendum to the Peer Review Report. The addendum stated that "[t]he claimant is capable of frequent (up to 2/3 of the day) standing/walking in an 8 hour day. There is no support for restrictions on lifting and carrying." AR 428.

14. MetLife denied the appeal in a letter dated September 28, 2010. In relevant part, the letter stated:

> The Occupational Medicine [independent medical consultant (IPC)] opined that the medical information did support functional limitations beyond September 19, 2009, but that you were capable of working an eight hour day. The IPC indicated you did have evidence of hip arthritis that was mild in nature and would be expected to result in intermittent symptoms and would cause some mild functional limitations in your ability to stand/walk for prolonged period of times and in your ability to squat and climb ladders/stairs . . . .
>
> In summary, we have evaluated this claim for Disability Pension Benefits for the time period beyond September 18, 2009, and we have concluded that we are without medical information which provides proof of a total and permanent inability to engage in any further employment or gainful pursuit beyond this date[.] . . . [W]e have determined that the information fails to support the continued need for restrictions and limitations that would have prevented you from performing any occupation. Although you may be disabled from performing your

       > custodial position, given your restrictions and limitations as noted above, you are able to perform other occupations. Therefore, you do not satisfy the above definition of disability for pension benefits. AR 320–21.

15. The appeal denial letter does not identify what “other occupations” that Obaid could perform.

16. Obaid filed a complaint in this Court on January 1, 2013, pursuant to § 1132(a)(1)(B). The complaint requests all disability pension benefits wrongfully withheld from Obaid from April 2010 to the date of judgment, minus all long term disability benefits and early retirement pension benefits actually paid to Obaid.[2] Compl. ¶ 24. The complaint also requests disability pension benefits “going forward,” attorney’s fees, and costs. Compl. ¶ 25–26.

17. The parties agreed to try this action as a non-jury trial based on a stipulated administrative record and their trial briefs. Endorsed Letter, May 28, 2013, ECF No. 13; Endorsed Letter, Mar. 26, 2013, ECF No. 7.

---

[2] The Pension Plan prohibits participants from receiving both a disability pension and a health fund benefit. If a participant is awarded retroactive disability benefits, “the retroactive benefits payable to the Participant shall be offset by the actual amount of Health Fund benefits that were paid to the Participant for such periods of time.” AR 68.

**CONCLUSIONS OF LAW**

1.  To the extent any of the foregoing findings of fact is a conclusion of law, it is hereby adopted as a conclusion of law, and vice versa.

2.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1) and (f).

3.  Under ERISA, a plan participant may sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).

4.  The parties agree that the Pension Plan is an "employee welfare benefit plan" subject to ERISA.  See 29 U.S.C. §§ 1002(1), 1003(a).

5.  Obaid filed the complaint within the applicable six-year statute of limitations.  See Hirt v. Equitable Ret. Plan for Emps., 450 F. Supp. 2d 331, 333 (S.D.N.Y. 2006).

6.  The Court reviews the denial of benefits de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the plan grants the administrator such authority, the Court reviews the administrator's decision for abuse of discretion. See id. at 111.

7. The Pension Plan affords the "Trustees or their authorized delegate(s) . . . sole and absolute discretion" to determine whether a participant is totally and permanently disabled. AR 66; see also AR 16, 81.

8. However, when a plan administrator has a conflict of interest, that conflict is a factor that should be weighed "as a factor by the reviewing court in determining whether the plan administrator abused its discretion in denying benefits." Petri v. Sheet Metal Workers' Nat'l Pension Fund, No. 07cv6142, 2009 WL 3075868, at *6 (S.D.N.Y. Sept. 28, 2009) (citing Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 112–15 (2008)). The Supreme Court in Glenn held that "the fact that a plan administrator both evaluates claims for benefits and pays benefits claims" creates a conflict of interest that may affect the applicable standard of review. 554 U.S. at 112. The Second Circuit Court of Appeals held that even when, as here, a board of trustees is "(by requirement of statute) evenly balanced between union and employer," a plan administrator that evaluates claims and pays benefits has a conflict of interest. Durakovic v. Bldg. Serv. 32 BJ Pension Fund, 609 F.3d 133, 139 (2d Cir. 2010). And courts must weigh the impact of that conflict of interest on a case-by-case basis. Id. at 139–40.

9. The defendants note that the Trustees delegated to MetLife the authority to make disability benefit determinations, and

that the Pension Fund pays MetLife a flat fee for each benefits application, regardless of whether MetLife awards or denies benefits. AR 259B–60. This, according to the defendants, obviated any potential conflict of interest. Obaid agrees that the Trustees have the *power* to delegate the authority to adjudicate disability benefits applications. However, Obaid insists that there is no evidence that the Trustees properly delegated this authority to MetLife. See generally McDonnell v. First Unum Life Ins. Co., No. 10cv8140, 2013 WL 3975941, at *7–11 (S.D.N.Y. Aug. 5, 2013).

10. The Court need not resolve this argument. Under the standard of review requested by the defendants—arbitrary and capricious review—the denial of disability pension benefits was erroneous as a matter of law.

11. Section 4.08 of the Pension Plan provides that a participant is entitled to a disability pension if "he is permanently and totally disabled (as defined in Section 4.10)," "he has at least 120 months of Service Credits," and "he became permanently and totally disabled while working in Covered Employment." AR 66. The defendants do not dispute that Obaid has at least 120 months of service credits and became disabled while working in covered employment.

12. But the defendants do dispute that Obaid is "permanently and totally disabled (as defined in Section 4.10)." Section

4.10 of the Pension Plan provides that a participant is totally and permanently disabled "if, on the basis of medical evidence satisfactory to the Trustees, he is found to have become, while working in Covered Employment, totally and permanently unable, as a result of bodily injury or disease, to engage in any further employment or gainful pursuit." AR 66. The Summary Plan Description ("SPD") similarly provides that "[t]otal and permanent disability is the permanent inability to work in any capacity, as determined by the Trustees or persons they designate. You will not satisfy this definition of total and permanent disability just because you are unable to continue in your usual occupation; you must be forever unable to perform any gainful employment to meet this Plan requirement." AR 167.

13. In Demirovic v. Building Service 32 B-J Pension Fund, 467 F.3d 208 (2d Cir. 2006), the Second Circuit Court of Appeals interpreted the SPD and Pension Plan language at issue here. The Court of Appeals held that the phrase "'any gainful employment' . . . may not reasonably be read as denying benefits to a person who is *physically* capable of any employment whatsoever, so long as it earns a nominal profit. Nor may it be read as allowing an administrator to disregard a claimant's individual vocational circumstances." Id. at 215. The Court further explained that a "finding that a claimant is physically capable of sedentary work is meaningless without some

consideration of whether she is vocationally qualified to obtain such employment, and to earn a reasonably substantial income from it, rising to the dignity of an income or livelihood, though not necessarily as much as she earned before the disability." Id. Thus, the Court of Appeals held that failing to conduct a "non-medical assessment as to whether" the claimant "has the vocational capacity to perform any type of work—of a type that actually exists in the national economy—to earn a reasonably substantial income" is arbitrary and capricious. Id. The nature of the vocational assessment "will be within the plan administrators' broad discretion," but "a complete absence of consideration of [the claimant's] vocational circumstances" is an abuse of discretion. Id. at 215–16; see also Durakovic, 609 F.3d at 141–42 (holding that the Pension Fund abused its discretion by concluding that an office cleaner in her late fifties could perform semi-skilled work).

14. Here, neither the initial application denial letter nor the appeal denial letter considered whether Obaid is vocationally capable of earning a reasonably substantial income. The denial letter states that Obaid "may not be able to return to [his] job as [c]ustodian, but [he] may have sedentary work capacity in the future." AR 313. And the appeal letter states that "[a]lthough you may be disabled from performing your custodial position, given your restrictions and limitations as noted above, you are

able to perform other occupations." AR 320–21. At no point does either letter identify any "sedentary" employment for which Obaid was qualified or that actually existed. Compare Kagan v. Unum Provident, 775 F. Supp. 2d 659, 679–80 (S.D.N.Y. 2011) (approving a vocational analysis that identified seven occupations the claimant could perform within his local labor market), with Karce v. Bldg. Serv. 32B J Pension Fund, No. 05cv9142, 2006 WL 3095962, at *9 (S.D.N.Y. Oct. 31, 2006) (holding that the Pension Fund abused its discretion by failing to identify what "sedentary work" a claimant could perform).

15. This error was not harmless. A nurse clinician interviewed Obaid by phone on June 17, 2010. AR 355. According to her interview notes, Obaid explained that he previously held two full time jobs, that both jobs involved maintenance and custodial work, that he had performed only maintenance and custodial work since 1975, and that he has no experience working with computers. AR 356. He explained that he was not sure "what he could do." Id. And in his description of his "activities of daily living," Obaid informed MetLife that he had a third grade education. AR 343. Despite having this information, MetLife failed to conduct a vocational analysis.

16. The defendants now agree that Obaid is totally disabled but argue that he failed to prove that his disability is permanent.

In their briefs, the defendants insist that had Obain elected to have hip surgery, he could have continued working.

17. There is no evidence in the record to support this argument. The claim denial letter states that “you may require hip surgery in the future. As a result, you will have limitations and restrictions that would preclude your abilities [sic] to return to work as a [c]ustodian.” AR 313. And the appeal denial letter simply states that Obaid’s injuries would not prevent him from “performing any occupation. Although you may be disabled from performing your custodial position[,] . . . you are able to perform other occupations.” AR 320–21. Indeed the Peer Review Report, upon which the appeal denial letter relied, states that “[t]he claimant’s hip arthritis is a *permanent condition*. If it advances enough, the claimant would be a candidate for total hip arthoplasty *which itself* would also likely result in permanent conditions. The claimant’s hip arthritis is a permanent condition. It will not get better with time and will likely progress.” AR 407 (emphasis added). There is no basis for the defendants’ speculation that if only the plaintiff has a hip replacement, then all will be better. And that was not the basis on which the plaintiff was denied benefits.

18. If a plan administrator’s decision was arbitrary and capricious, courts often remand with instructions to consider

additional evidence. See Pepe v. Newspaper and Mail Deliveries'-Publishers Pension Fund, 559 F.3d 140, 149 (2d Cir. 2009). However, remanding is not appropriate "where the difficulty is not that the administrative record was incomplete but that a denial of benefits based on the record was unreasonable." Zervos v. Verizon N.Y., Inc., 277 F.3d 635, 648 (2d Cir. 2002) (internal quotation marks omitted) (quoting Zuckerbrod v. Phx. Mut. Life Ins. Co., 78 F.3d 46, 51 n.4 (2d Cir. 1996)).

19. Based on the record, the denial of benefits was unreasonable. The defendants have not identified potential evidence that would justify withholding benefits, let alone argued that remand is the correct remedy. Obaid provided the defendants with his relevant work and educational history; since 1975, he has worked as a custodian, and he has a third grade education. It is difficult to see what, if any, sedentary jobs that Obaid is qualified to perform. Moreover, the Pension Fund can hardly claim that it was unaware that it must determine whether a claimant is qualified for other employment. The two leading Second Circuit Court of Appeals opinions on that question involved this Fund. See Demirovic, 467 F.3d at 208; Durakovic, 609 F.3d at 133. Indeed, in Durakovic, where the Pension Fund failed to conduct an adequate vocational analysis for an office cleaner in her fifties, the Second Circuit Court

of Appeals appeared to remand for the district court to award the claimant disability benefits. 609 F.3d at 142.

**CONCLUSION**

The plaintiff is entitled to a judgment equal to the disability pension benefits withheld from the date of entitlement to the date of judgment, minus all long term disability benefits and early retirement pension benefits actually paid to Obaid. The plaintiff is also entitled to disability pension benefits going forward.

However, neither party has briefed (a) the precise dollar amount of disability benefits that was improperly withheld from Obaid, (b) whether Obaid is entitled to attorney's fees and costs, (c) the proper amount, if any, of the fees and costs, (d) whether Obaid is entitled to pre-judgment interest, and (e) the applicable pre-judgment interest rate. Therefore, this opinion concerns only the defendants' liability.

Obaid may move, with supporting evidence, for the Court to determine the dollar amount of disability benefits that were improperly withheld from Obaid and to award pre-judgment interest, attorney's fees, and costs.

**SO ORDERED.**

**Dated: New York, New York**
**December 1, 2014**

**/S/**
**John G. Koeltl**
**United States District Judge**